Receipt #065955

ORIGINAL

FILED
DEC 29 2006
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

THE HOPI TRIBE )
)
Plaintiff, )
)
v. ) Civil Action No. 06-941 L
)
THE UNITED STATES OF AMERICA )
)
Defendant. )
)

**COMPLAINT**

1. This is an action by an Indian Tribe seeking money damages against Defendant United States for breaches of trust by Defendant in the management and administration of the trust property and trust resources of the Tribe. This action arises out of Defendant's breach of fiduciary duties owed to the Plaintiff Tribe arising under federal executive orders, statutes, regulations and federal common law under which the United States assumed control over and responsibility for the management of the Tribe's trust property and trust resources.

**Parties**

2. Plaintiff, the Hopi Tribe ("Tribe"), is a federally-recognized Indian tribe, recognized by the United States as a sovereign Indian tribe with legal rights and responsibilities, eligible for the special programs and services provided by the United States to Indians because of its status as an Indian tribe.

3. Defendant United States has assumed by Executive order, statutes, regulations and federal common law, control over the trust property of the Tribe and is charged by law with carrying out the duties and responsibilities of the United States as trustee for the Tribe.

**Jurisdiction**

4. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1505 and 1491, as this action involves a claim against the United States for money damages brought by an Indian tribe residing within the territorial limits of the United States and arises under the Constitution, laws, treaties or regulations of the United States or Executive orders of the President as well as a well-established body of federal common law defining and describing the fiduciary relationship between the United States and the Tribe, created by these laws.

**Allegations**

5. The Hopi Tribe occupies a Reservation in northern Arizona and is the beneficial owner of land and natural resources within the Reservation, title to which is held in trust by the United States for the benefit of the Tribe. The Tribe's lands include land valuable for minerals, grazing, agricultural and other purposes.

6. Under law, tribal land held in trust by the United States is inalienable except as authorized by Congress. 25 U.S.C. §177. Congress has granted the Secretary of the Interior authority to approve conveyances of certain interests in trust land, such as leases, easements, and rights-of-way. The law further establishes the terms and conditions under which such conveyances

may be made, and generally requires that fair compensation be paid to the tribe for any use of tribal lands.

7. By various Acts of Congress, commencing with statutes adopted more than a century ago, the Secretary of the Interior was authorized and directed to collect income from tribal trust property and to deposit such trust income in the United States Treasury and other depository institutions for the benefit of the tribe. E.g., Act of March 3, 1883, c. 141, § 1, 22 Stat. 590. By subsequent statues, Congress directed that interest be paid on tribal trust funds, and required that such trust funds be invested. See e.g., Act of February 12, 1929, c. 178, 45 Stat. 1164, codified as amended, 25 U.S.C. §161b; Act of June 24, 1938, 52 Stat. 1037, codified as amended, 25 U.S.C. § 162a.

8. Defendant assumed control and management over trust property of the Tribe as authorized and directed by Congress. Defendant, through the Secretary of the Interior has approved leases, easements and grants of other interests in trust lands of the Tribe, and Defendant has assumed responsibility for collection, deposit and investment of the income generated by trust land of the Tribe. These include funds generated by mineral, grazing and agricultural leases, rights-of-way, and judgments paid to the Tribe.

9. Because the United States holds tribal land in trust, it has assumed the obligations of a trustee. United States v. Mitchell, 463 U.S. 206, 225 (1983). As trustee, the United States has a fiduciary relationship and obligations of the highest responsibility and trust to administer the trust

with no less than the skill and care exercised by a prudent trustee managing similar property. The United States "has charged itself with moral obligations of the highest responsibility and trust" in its conduct with Indians, and its conduct "should therefore be judged by the most exacting fiduciary standards." Seminole Nation v. United States, 316 U.S. 286, 297 (1942).

10. The trust obligations of the United States include, among other duties, the duty to ensure that tribal trust property and trust funds are protected, preserved and managed so as to produce a maximum return to the tribal owner consistent with the trust character of the property.

11. The trust obligations of the United States include, among other duties, the following duties: to maintain adequate records with respect to the trust property; to maintain adequate systems and controls to guard against error or dishonesty; to provide regular and accurate accountings to the trust beneficiaries; to refrain from self-dealing or benefitting from the management of the trust property.

12. Defendant controls all the books and records of account affecting tribal trust funds and trust property. Defendant, however, has never rendered an audit or accounting to the Tribe for its trust funds and property. Defendant has further failed to establish any effective system or provision for regular or periodic accounting for the trust property and funds. As a consequence, Defendant has kept and continues to keep the Tribe, as the trust beneficiary, uninformed as to the trust property it owns, what income the trust property has produced, and what disposition has been made of the income.

13. As found by the United States Inspector General for the Department of the Interior, the United States General Accounting Office, and the United States Congress, among others, there are massive and long-standing problems with the Defendant's administration of Indian trust funds and management of trust property. After a series of oversight hearings on Interior's management of Indian trust funds, Congress issued a report condemning those practices. See Misplaced Trust, Bureau of Indian Affairs Mismanagement of the Indian Trust Fund, H.R. Rept. No, 102-499, 102d Cong. 2d Sess. (1992). As Congress found:

> Scores of reports over the years by the Interior Department's Inspector General, the U.S. General Accounting Office, the Office of Management and Budget, have documented significant, habitual problems in BIA's ability to fully and accurately account for trust fund moneys, to properly discharge its fiduciary responsibilities, and to prudently manage the trust funds. [Id. at 2]. . .
>
> The Bureau has repeatedly ignored directives to undertake needed management reform measures. [Id. at 3]. . .
>
> As a result of this dismal history of inaction and incompetence, there is no assurance that the Bureau actually desires to, or will, make any substantial advancement toward rectifying the basic financial management failures brought to their attention. Despite a decade of initiatives, the Bureau's headquarters leadership and accountability continue to be woefully inadequate. . . .
>
> It is apparent that top Interior Department officials have utterly failed to grasp the human impact of its financial management of the Indian trust fund. The Indian trust fund is more than balance sheets and accounting procedures. These moneys are crucial to the daily operations of native American tribes and a source of income to tens of thousands of native Americans. [Id. at 5].

Congress further found the Defendant's administration of Indian trust funds to be:

> grossly inadequate in numerous important respects. The Bureau [of Indian Affairs] has failed to accurately account for trust fund moneys. Indeed, it cannot even provide account holders with meaningful

> periodic statements on their balances. It cannot consistently and prudently invest trust funds and pay interest to account holders. It does not have consistent written policies or procedures that cover all of its trust fund accounting practices. Under the management of the Bureau of Indian Affairs, the Indian trust fund is equivalent to a bank that doesn't know how much money it has.

Id. at 56.

14. Upon information and belief, Defendant's mismanagement of the Tribe's trust funds and trust property has resulted in financial losses to the Tribe. However, the full extent of such losses is unknown to the Tribe because Defendant has failed to provide the Tribe with an accounting of its trust funds and property, and further has failed to maintain accurate books and records of account, lost and destroyed relevant trust account records, failed or refused to disclose known losses to the Tribe, and failed or refused to reimburse the Tribe for losses to its trust funds. See Misplaced Trust , H.R. Rept. No, 102-499 at 37- 41.

15. By the Act of December 22, 1987, Pub. L. No. 100-202, 101 Stat. 1329, Congress required that the Secretary of the Interior audit and reconcile tribal trust funds, and provide all tribes with an accounting of such funds. Congress reaffirmed the two mandates of the 1987 Act in subsequent statutes, namely the Act of October 23, 1989, Pub. L. No. 101-121, 103 Stat. 701; the Act of November 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915, and the Act of November 3, 1991, Pub. L. No. 102-154, 105 Stat. 990. By these Acts, Congress further required that the Secretary certify, through an independent party, the results of the reconciliation of tribal trust funds as the most complete reconciliation possible of such funds.

16. To protect the rights of tribes until accountings of their trust funds could be completed, Congress has provided, in each Interior Department Appropriations Act since 1990 that "the statute of limitations shall not commence to run on any claim concerning losses to or mismanagement of trust funds until the affected tribe or individual Indian has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss." See Act of November 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915; Act of November 13, 1991, Pub. L. No. 102-154, 105 Stat. 990; Act of October 5, 1992, Pub. L. No. 102-381, 106 Stat. 1374; Act of November 11, 1993, Pub. L. No. 103-138, 107 Stat. 1379; Act of September 30, 1994, Pub. L. No. 103-332, 108 Stat. 2499; Act of April 26, 1996, Pub. L. No. 104-134, 110 Stat. 1321; Act of September 30, 1996, Pub. L. No. 104-208, 110 Stat. 3009; Act of November 14, 1997, Pub. L. No. 105-83, 111 Stat. 1543; Act of October 21, 1998, Pub. L. No. 105-277, 112 Stat. 2681; Act of November 29, 1999, Pub. L. No. 106-113, 113 Stat. 1501; Act of October 11, 2000, Pub. L. No. 106-291, 114 Stat. 922; Act of November 5, 2001, Pub. L. No. 107-63, 115 Stat. 414; Act of February 20, 2003, Pub. L. No. 108-7, 117 Stat. 11; Act of November 10, 2003, Pub. L. No. 108-108, 117 Stat. 1241; Act of December 8, 2004, Pub. L. No. 108-447, 118 Stat. 2809; Act of August 2, 2005, Pub. L. No. 109-54, 119 Stat. 499.

17. On October 25, 1994, Congress enacted the American Indian Trust Fund Management Reform Act, codified at 25 U.S.C. §§ 4001-61. Under this Act Congress recognized the United States' pre-existing trust responsibilities, and charged Executive Branch officials with additional responsibilities to ensure proper discharge of the trust responsibilities of the United States for the benefit of the Tribes. These include the duty to provide periodic, timely accountings of trust funds

to tribal and individual Indian beneficiaries, and the duty to cause an annual audit of all trust funds to be conducted. 25 U.S.C. §4011; 25 U.S.C. §162a(d).

18. As evidenced by reports issued by the Interior Department Inspector General, the General Accounting Office, and the Office of Management and Budget, among others, notwithstanding the foregoing Acts of Congress, Defendant has continued to fail to implement the reforms required by law.

19. In the early 1990s, the United States Department of the Interior entered into a contract with the Arthur Andersen accounting firm under which Arthur Andersen was to provide a reconciliation of certain tribal trust fund accounts.

20. At some time after January 8, 1996, a report prepared by Arthur Andersen was delivered to the Tribe. The report was entitled "Tribal Trust Funds Reconciliation Project, Five Tribes Fill-the-Gap/Special Procedures, Agreed-upon Procedures and Findings Report for Hopi Tribe of Arizona."

21. In the Andersen report, Arthur Andersen expressly states that the report and the underlying work done do "not constitute an audit made in accordance with generally accepted auditing standards."

22. The Andersen report was not certified by an independent party as required by the Acts

of October 23, 1989, Pub. L. No. 101-121, 103 Stat. 701; November 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915, and November 3, 1991, Pub. L. No. 102-154, 105 Stat. 990, described in paragraph 15 above. The Andersen reports have been criticized by the General Accounting Office, among others. See United States General Accounting Office, Report to Senate Committee on Indian Affairs, Tribal Reconciliation Results, GAO Report No. B-266127, May 3, 1996.

23. The Andersen report does not reflect reliable, accurate or complete accountings of the Tribe's trust funds, for among other reasons: a) the report was not prepared in accordance with generally accepted accounting principles, but was based on procedures defined by the Bureau of Indian Affairs, which imposed limitations on the scope of the wo rk and made changes in methodologies over the course of the project that were not disclosed to the Tribe; b) the report was premised on the erroneous assumption that an accounting of trust funds could be done based on a review of existing information recorded in the Bureau of Indian Affairs' accounting system, without determining whether all receipts or income due had been collected and properly recorded by the Bureau, and the report therefore fails to address the possibility that materially significant transactions were not recorded by the Bureau or that the information as recorded by the Bureau was inaccurate or in error; c) the report does not disclose adjustments that were recommended by Arthur Andersen but which the Bureau of Indian Affairs did not accept; d) the report fails to address many transactions where accounting records could not be located. See United States General Accounting Office, Report to Senate Committee on Indian Affairs, Tribal Reconciliation Results, GAO Report No. B-266127, May 3, 1996.

24. Defendant asked the Tribe whether the Tribe accepted the findings of the Andersen report as a full and complete accounting, and whether the Tribe accepted the balances of its trust funds, as reflected in the Andersen report. The Tribe did not and does not accept the Andersen report, and has affirmatively so advised the Defendant.

25. To date, the Defendant has failed to provide the Tribe with an accounting of the Tribe's trust funds and trust property.

26. To protect the rights of Tribes and allow for possible resolution of trust accounting claims, Congress, by Act of March 19, 2002, directed that the Arthur Andersen reports be deemed to have been delivered to Tribes as of December 31, 1999. Pub. L. No. 107-153, 116 Stat. 79. By Act of Congress of December 30, 2005, Congress amended Pub. L. No. 107-153, to provide that the Arthur Andersen reports be deemed to have been delivered to Tribes as of December 31, 2000. Pub. L. No. 109-158, 119 Stat. 2954.

## Count I

## Failure or Delay in Collecting Funds Due to the Tribe

27. The Tribe realleges and incorporates by reference the allegations contained in paragraphs 1 through 26 above.

28. Defendant, at all times relevant, has been under fiduciary and statutory obligations

to collect funds owing to the Tribe arising from the use or lease by Defendant or third parties of the Tribe's trust lands and trust natural resources under the management and control of the Defendant.

29. In breach of its fiduciary duty to the Tribe and to the Tribe's detriment, Defendant has delayed unreasonably, or failed to collect, all such funds.

**Count II**

**Delay in Depositing Funds Due to the Tribe**

30. The Tribe realleges and incorporates by reference the allegations contained in paragraphs 1 through 29 above.

31. Defendant, at all times relevant, has been under statutory and fiduciary obligations to promptly place income from Tribal trust property into interest-bearing accounts.

32. On information and belief, Defendant, in breach of its fiduciary duty to the Tribe and to the Tribe's detriment, delayed for unreasonable periods of time depositing the Tribe's funds in interest-bearing accounts.

**Count III**

**Holding Trust Funds in the Treasury at Inadequate Interest**

33. The Tribe realleges and incorporates by reference the allegations contained in paragraphs 1 through 32 above.

34. Upon information and belief, Defendant retained certain of the Tribe's trust funds in its Treasury in either non-interest bearing accounts or accounts paying interest at rates below rates that could have been obtained had such funds been invested in other obligations of the Defendant and its agencies, or bank certificates or obligations guaranteed or secured as required by federal law bearing interest at higher rates.

35. Defendant breached its fiduciary duty to the Tribe to the Tribe's detriment by, in effect, borrowing tribal trust funds for its own purposes and benefit and by failing to invest such funds and the interest on such funds to earn maximum income for the Tribe.

**Count IV**

**Investment at Inadequate Rates**

36. The Tribe realleges and incorporates by reference the allegations contained in paragraphs 1 through 35 above.

37. Defendant invested certain of the Tribe's trust funds in various governmental and private securities guaranteed or secured as required by federal law. On information and belief, Defendant did so in breach of its fiduciary duty to the Tribe and to the Tribe's detriment in that at the time the investments were made other securities or obligations, guaranteed or secured as required by federal law, were readily available for investment at higher interest rates.

**Count V**

**Improper Expenditures from Interest Bearing Accounts**

38. The Tribe realleges and incorporates by reference the allegations contained in paragraphs 1 through 37 above.

39. Upon information and belief, Defendant made expenditures from the Tribe's interest bearing funds or investments returning a higher yield when lower yield funds or funds bearing no interest were available, all in violation of Defendant's statutory and fiduciaries duties to the Tribe.

**Count VI**

**Failure to Monitor Leases and other Agreements to Ensure Accurate and Timely Payments of Compensation Due**

40. The Tribe realleges and incorporates by reference the allegations contained in paragraphs 1 through 39 above.

41. Under federal law, the Defendant has a duty to oversee and monitor third parties who lease or otherwise have use of the Tribe's trust lands and natural resources to ensure compliance with the terms of their leases or other agreements.

42. Upon information and belief, the Defendant failed to require such third parties to comply with the terms of their agreements for use of tribal lands and has failed to oversee, monitor and administer said agreements on a basis at least equal to the management of similar lands by a prudent trustee, as a result of which the Tribe has not received all compensation due to the Tribe under those agreements, and has not received timely payment of compensation due under those agreements.

**Count VII**

**Failure to Periodically Review and Adjust Compensation Due to the Tribe Under Leases and Other Agreements with Third Parties.**

43. The Tribe realleges and incorporates by reference the allegations contained in paragraphs 1 through 42 above.

44. Under federal law and the terms of the leases and other agreements under which third parties have use of the Tribe's trust lands and natural resources, the Defendant is required to conduct a periodic review of the terms of the lease or other agreement in light of the economic conditions at the time for purposes of adjusting the compensation to be paid to the Tribe.

45. Upon information and belief, in breach of its fiduciary duty to the Tribe and to the Tribe's detriment, Defendant has failed to make such periodic reviews and, as a result, failed to adjust the compensation due to the Tribe from third parties who lease or otherwise have use of the Tribe's trust land and resources.

**Count VIII**

**Duty to Account to Determine Amount of Damages**

46. The Tribe realleges and incorporates by reference the allegations contained in paragraphs 1 through 45 above.

47. Defendant owes the Tribe a fiduciary duty and obligations of the highest responsibility and trust to administer the Tribe's trust property with no less than the skill and care exercised by a prudent trustee managing similar property.

48. Defendant's fiduciary duties include, among others, the duty to provide the Tribe with a full and complete accounting of the Tribe's trust funds and trust property.

49. Defendant has failed to provide the Tribe with an accounting of the Tribe's trust funds and trust property, and this failure is a breach of Defendants' fiduciary duties to the Tribe in violation of federal law.

50. Because Defendant has failed to provide the Tribe with an accounting consistent with the requirements of generally accepted accounting principles and auditing standards, the Tribe is entitled to an order from this Court compelling such an accounting to aid the Court in a final determination of damages due to the Tribe.

## CLAIMS FOR RELIEF

WHEREFORE the Tribe prays:

1. For a determination that the Defendant is liable to the Tribe in damages for the injuries and losses caused through violations of the Defendant's fiduciary and statutory responsibilities to the Tribe.

2. That Defendant be ordered to render such accountings of its management and handling of the Tribe's funds and income from the Tribe's trust land and natural resources as are appropriate in aid of the Court's determination of the specific amount of money damages due to the Tribe.

3. For a determination of the amount of damages due to the Tribe.

4. For such further relief as the Court may deem just.

Respectfully submitted

Dated: December 29, 2006

Reid Peyton Chambers by Anne D. Noto By Anne D. Noto
Reid Peyton Chambers
Sonosky, Chambers, Sachse, Endreson & Perry, LLP
1425 K Street, N.W., Suite 600
Washington D.C. 20005
202-682-0240 (tel)
202-682-0249 (fax)
rchambers@sonosky.com

Counsel for Plaintiff Hopi Tribe

Of Counsel:

Harry R. Sachse
Anne D. Noto
Sonosky, Chambers, Sachse, Endreson & Perry, LLP
1425 K Street, N.W., Suite 600
Washington D.C. 20005
202-682-0240 (tel)
202-682-0249 (fax)
hsachse@sonosky.com
anoto@sonosky.com

A. Scott Canty
General Counsel
The Hopi Tribe
5200 East Cortland Blvd., Suite E-200
Flagstaff, Arizona 86004
Phone: 928-527-4242 Ext. 301
Fax: 928-527-4959
scanty0856@aol.com
scanty@hopi.nsn.us